UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NAXOS, LLC,<br><br>                     Plaintiff,<br>      v.<br><br>AMERICAN FAMILY<br>INSURANCE COMPANY,<br><br>                     Defendant. | CASE NO. C18-1287JLR<br><br>ORDER DENYING<br>DEFENDANT'S MOTION FOR<br>PARTIAL SUMMARY<br>JUDGMENT |

## I. INTRODUCTION

Before the court are two motions: (1) Defendant American Family Insurance Company's ("AFI") motion for partial summary judgment regarding judicial estoppel (MSJ (Dkt. # 31); *see also* Reply (Dkt. # 43)); and (2) Plaintiff Naxos, LLC's ("Naxos") motion to strike redundant, immaterial, impertinent, or scandalous material from AFI's motion for partial summary judgment, which is included in Naxos's opposition to AFI's motion for summary judgment (*See* Resp. (Dkt. # 36) at 3-4). Having considered the

parties' submissions, the appropriate portions of the record, and the relevant law, the court DENIES AFI's motion for partial summary judgment.[1]

## II.  BACKGROUND

**A.  Naxos's 2014 Bankruptcy Petition**

Although the underlying action between Naxos and AFI is an insurance coverage dispute, AFI's motion centers on Naxos's conduct during a bankruptcy proceeding. Naxos owns and operates Spiro's Greek Restaurant in Kent, Washington. (Compl. (Dkt. # 1-2) ¶ 3.1.) On August 4, 2014, Naxos filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Western District of Washington. (*See* Muth Decl. (Dkt. # 32) ¶ 2, Ex. A.[2]) As part of that proceeding, Naxos submitted bankruptcy schedules that detailed the estimated value of Naxos's personal property, among other things. (*See id.* ¶ 4, Ex. C at 44-48 (the "Personal Property Schedule").) The Personal Property Schedule, which Naxos filed on September 17, 2014, estimated that the value of Naxos's "[m]achinery, fixtures, equipment, and supplies used in business" was $3,800, and the value of its "[i]nventory" was $2,500.[3] (*See id.* at 46.) Those two line items, $1,968.66

//

---

[1] Neither party has requested oral argument (*see* MSJ at 1; Resp. at 1), and the court finds it unnecessary for the disposition of this motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Although Naxos's bankruptcy petition originally listed the debtor as "Spiros Greek Island, LLC" (*see* Muth. Decl, ¶ 2, Ex. A at 1), Naxos's bankruptcy counsel moved to amend the petition to "correctly list the name of the [debtor] as 'Naxos, LLC,'" *see In Re: Naxos, LLC*, Case No. 14-15859, Dkt. # 14 (Bankr. W.D. Wash.). The bankruptcy court granted that motion. (*See id.*, Dkt. # 17.)

[3] Naxos attached a list of "Restaurant Equipment/Furnishings" to the Personal Property Schedule that set forth the specific items that comprised the $3,800 of "[m]achinery, fixtures, equipment, and supplies used in business." (*See* Personal Property Schedule at 47-48.)

in checking account funds, and an estimated $250,000 value attached to Spiro's ongoing business operations, made up the entirety of Naxos's declarations on the Personal Property Schedule. (*See id.* at 44-46.)

On February 16, 2015, Naxos filed an amended plan of reorganization in the bankruptcy proceeding that proposed that Naxos continue to run Spiro's and pay its creditors from cash flow received from the restaurant. *See In Re: Naxos, LLC*, Dkt. # 52 at 1, 6. That same day, Naxos filed a proposed disclosure statement and included a copy of the previously-filed Personal Property Schedule identifying $3,800 worth of "[m]achinery, fixtures, equipment, and supplies used in business" and $2,500 worth of "[i]nventory" as an exhibit in support of that disclosure statement.[4] *See id.* Dkt. ## 57, 57-2 at 2-6. The bankruptcy court confirmed Naxos's plan of reorganization on April 15, 2015, *see id.* Dkt. # 83; granted Naxos's application for entry of a final decree on February 15, 2017, *see id.* Dkt. # 110; and closed Naxos's bankruptcy proceeding on March 1, 2017, *see id.* 3/1/17 Dkt. Entry.

**B.      The Sewage Spill and Naxos's Insurance Claim**

On August 5, 2015—about a year after Naxos's bankruptcy filing—"[o]ver 600 gallons of black water sewage spewed from a ruptured sewer pipe" into Spiro's. (*See* Compl. ¶¶ 3.1-3.4.) Naxos claims that this incident caused significant damage to Spiro's and ultimately forced Naxos to cease all business operations at the restaurant. (*See id.* ¶¶ 3.5-3.7.) After this sewage spill, Naxos notified its insurer, AFI, about the incident.

---

[4] Naxos filed its original disclosure statement on January 26, 2015, and included the Personal Property Schedule in support of that filing. *See In Re: Naxos, LLC*, Dkt. # 49-2.

(*See id.* ¶ 3.8.) Although AFI eventually began issuing payments to Naxos in response to Naxos's insurance claim, Naxos alleges that AFI failed to adequately respond to Naxos's claim and continues to improperly withhold amounts owed to Naxos. (*See id.* ¶¶ 3.9-3.34.)

The parties' insurance policy dictates that either AFI or Naxos may make a demand for an independent appraisal of the loss in the event that the parties disagree on the amount of the loss. (Neal Decl. (Dkt. # 37) ¶ 2, Ex. 1 (Dkt. # 37-1) (the "Policy") at 36.) The policy states that any such appraisal "will be binding."[5] (*See id.*) Pursuant to this provision, Naxos demanded an appraisal. (*See* Resp. at 2-3.) According to Naxos, "[b]oth Naxos and AFI[] appeared in this appraisal, selected their own appraisers who in turn chose a neutral umpire, and submitted witnesses, evidence and briefing." (*Id.* at 3.) During the appraisal, AFI argued that the actual cash value ("ACV") of Naxos's loss to its "Business Personal Property"—which AFI defined to include both "Kitchen Capital Equipment (e.g., Appliances)" and "Business Personal Property (e.g., Other Equipment)"—was $63,617.38 and the replacement cost value ("RCV") of that loss was $93,405.43.[6] (*See* Neal Decl. ¶ 3, Ex. 2 at 12; *see also id.* ¶ 4, Ex. 3 at 7.) On March 6, 2018, the appraisal panel issued its final award and determined that the ACV of the loss

//

---

[5] Although the appraisal provision in the policy states that "[AFI] will still retain [its] right to deny the claim" even if there is an appraisal (*see* Policy at 36), the parties executed a Washington Changes endorsement that clarified that that portion of the appraisal provision does not apply (*id.* at 81).

[6] Neither party submits evidence identifying Naxos's appraisal position on the ACV and RCV of Naxos's Business Personal Property.

to Naxos's Business Personal Property was $109,136.80 and the RCV was $136,421.00.[7] (Neal Decl. ¶ 5, Ex. 4.)

**C.  The Underlying Action**

Naxos filed its complaint in King County Superior Court on August 3, 2018.  (*See* Compl. at 9.)  AFI removed Naxos's lawsuit to this court on August 30, 2018.  (Not. of Removal (Dkt. # 1).)  Naxos pleads causes of action for (1) breach of contract, (2) insurance bad faith, (3) negligent claims handling, (4) violation of Washington's Consumer Protection Act, and (5) violation of Washington's Insurance Fair Conduct Act.  (Compl. ¶¶ 4.1-8.5.)  Naxos alleges that each cause of action arises out of AFI's handling of Naxos's claim to recover insurance proceeds as a result of the sewage spill at Spiro's.  (*See id.* ¶¶ 3.2-3.34.)  AFI counterclaims for (1) breach of contract, (2) misrepresentation and concealment, and (3) bad faith and violation of the Washington Consumer Protection Act.  (Answer (Dkt. # 15) at 13-14.)

### III.  ANALYSIS

AFI's motion presents a narrow question of judicial estoppel.  AFI seeks to estop Naxos from seeking damages of over $6,300 for the loss of "Business Personal Property"—a term that AFI does not define—based on the representations Naxos made in the Personal Property Schedule.[8]  (*See* MSJ at 1-2.)  Because Naxos valued its

---

[7] The appraisal panel's one-page award does not state what specific property is included in the Business Personal Property award.  (*See* Neal Decl. ¶ 5, Ex. 4.)

[8] Although neither AFI nor Naxos define the term "Business Personal Property," the court adopts it here solely to mirror the parties' briefing.  The court takes no position on the appropriate definition of "Business Personal Property" under the parties' insurance policy.

"inventory" at $2,500 and its "machinery, fixtures, equipment, and supplies used in business" at $3,800 in the bankruptcy proceeding, AFI argues that Naxos should be judicially estopped from claiming more than $6,300—the combined total of those amounts—in insurance coverage for Business Personal Property in this action. (*See id.* at 10-13.) The court first addresses Naxos's motion to strike before turning to the merits of AFI's summary judgment motion.

A. **Naxos's Motion to Strike**

Naxos's motion to strike is not well-taken. Naxos asks the court to strike a handful of factual statements and legal arguments from AFI's motion for summary judgment. (*See* Resp. at 3-4.) Naxos does not attack the admissibility of AFI's statements and arguments. (*See id.*) Nor could it. The statements Naxos challenges include recitations of Naxos's allegations in the complaint, statements about Naxos's positions in the bankruptcy proceedings that are supported by declarations, and AFI's argument about the applicable caselaw. (*See id.*) Such statements are clearly admissible. Instead, Naxos claims these statements and arguments are "redundant, immaterial, or impertinent" to AFI's judicial estoppel motion. (*See id.*) In other words, Naxos asks this court to strike portions of AFI's brief that Naxos believes are irrelevant to the relief Naxos seeks. That is not a proper use of a motion to strike. The court can decide for itself whether AFI's brief supports AFI's argument. Naxos's motion to strike is DENIED.

//

//

**B.    Summary Judgment Legal Standard**

AFI moves for partial summary judgment under Federal Rule of Civil Procedure 56. (*See* Mot at 1.) Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden to show there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party will bear the ultimate burden of persuasion at trial, it must establish a *prima facie* showing in support of its position on that issue. *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *Id.* at 1473. If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" to withstand summary judgment.[9] *Galen*, 477 F.3d at 658.

//

//

---

[9] The same standard and procedural rules apply to motions for partial summary judgment. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 768 (9th Cir. 1981) (noting that, on a motion for partial summary judgment "the moving party has the burden of showing that there is no genuine issue as to any material fact and that he is entitled to a partial summary judgment as a matter of law").

## C. AFI's Motion for Partial Summary Judgment

Judicial estoppel is an "equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)) (internal quotation marks omitted). Courts invoke judicial estoppel "to prevent a party from gaining an advantage by taking inconsistent positions" and to "protect against a litigant playing fast and loose with the courts." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (quoting *Russell*, 893 F.2d at 1037) (internal quotations omitted). The court considers three factors in determining whether to apply the doctrine: (1) whether the party's later position is "clearly inconsistent" with its earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position and the court's acceptance of the later position would lead to the perception that the party misled either court; and (3) whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *See New Hampshire*, 532 U.S. at 750-51 (citations omitted). The court addresses each of these factors in turn.

### 1. Inconsistent Position

AFI argues that Naxos's inconsistent positions are straightforward: in the Personal Property Schedule, Naxos claimed only $6,300 in inventory and kitchen equipment, but in this case, Naxos is claiming Business Personal Property "in excess of $261,009.89." (*See* MSJ at 11.) AFI calculated that $261,009.89 amount by totaling two amounts allegedly derived from the March 6, 2018, appraisal award: $150,000 in kitchen equipment and $86,009.89 in Business Personal Property. (*See id.* at 8-9 (citing Muth

Decl. ¶ 11, Ex. J).) Naxos disputes the value of the appraisal award, but does not directly argue that the appraisal award is consistent with the Personal Property Schedule. (*See* Resp. at 5-9.) On the value dispute, Naxos claims that the appraisal panel determined that the ACV of Naxos's Business Personal Property was $109,136.80 and the RCV was $136,421.00. (*See id.* at 3 (citing Neal Decl. ¶ 5, Ex. 4).) The major discrepancy between Naxos's valuation and AFI's is that Naxos does not appear to include the $150,000 in kitchen equipment coverage that AFI identified. (*Compare* Resp. at 3 (citing Neal Decl. ¶ 5, Ex. 4) *with* MSJ at 8-9 (citing Muth Decl. ¶ 11, Ex. J).) On the consistency issue, Naxos argues that bankruptcy schedules should be given "little weight" and that the subsequent appraisal "contradict[s] and rectif[ies] any discrepancy between values." (*See* Resp. at 5-9.)

The major flaw with AFI's argument is that it is inadequately supported. The court understands the simplicity of pointing to the discrepancy in value between the appraisal award and the Personal Property Schedule and summarily declaring inconsistency. But the analysis required to show that Naxos has taken "clearly inconsistent" positions "requires more than a 'threshold inconsistency.'" *See United States v. Washington*, 20 F. Supp. 3d 986, 1043 (W.D. Wash. 2013) (citing *General Signal Corp. v. MCI Telecom. Corp.*, 66 F.3d 1500, 1505 (9th Cir. 1995)). AFI has established only a threshold inconsistency. It does not explain in any detail what specific property makes up the $261,009.89 that the appraisal panel awarded Naxos, what valuation methodology Naxos and the appraisal panel utilized, and whether the gap in time between when Naxos filed the Personal Property Schedule and when the appraisal

panel issued its award impacts the valuation analysis. (*See generally* MSJ.) Without more detail from AFI as to why the valuations differed, the court is left wondering if comparing the Personal Property Schedule to the appraisal award is an apples-to-apples comparison. *See, e.g.*, *Hammer v. State Auto Prop. & Cas. Ins. Co.*, No. 1:18-CV-00008-GNS, 2019 WL 3536820, at *4 (W.D. Ky. Aug. 2, 2019) ("In this case, neither party has conclusively demonstrated what method was used to value Plaintiff's property during the bankruptcy proceeding, but it is clear that the policy at issue in this case provides for the replacement value of covered property. Thus, if Plaintiff provided liquidation numbers for his property in the bankruptcy proceeding, there would necessarily be a significant discrepancy between liquidation and replacement cost values."); *Pavelka v. Allstate Prop. & Cas. Ins. Co.*, 91 F. Supp. 3d 931, 936-38 (E.D. Mich. 2015) (rejecting a judicial estoppel argument based on the difference between the value plaintiff assigned to property in insurance litigation and the value assigned in a bankruptcy proceeding because the insurer "fail[ed] to take into account *why* the value of Plaintiffs' personal property differs").

The court does condone the practice of undervaluing property in bankruptcy proceedings and then claiming that same property is worth significantly more in an insurance dispute. The Ninth Circuit has noted that "the importance of full disclosure in bankruptcy proceedings 'cannot be overemphasized.'" *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 272-73 (9th Cir. 2013) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)); *In re An-Tze Cheng*, 308 B.R. 448, 458 (B.A.P. 9th Cir. 2004) ("The efficacy of the bankruptcy system depends in important respects on accurate

self-reporting by debtors.  Debtors and bankruptcy professionals who do not fulfill their obligations deserve to be chastised severely.").  Courts have applied judicial estoppel where a debtor understates the value of property in bankruptcy court but then claims substantially more in subsequent insurance proceedings.  *See, e.g.*, *Russell v. USAA Gen. Indem. Co.*, No. 15-CV-7380, 2018 WL 2009503, at *5 (N.D. Ill. Apr. 30, 2018) ("[J]udicial estoppel bars the Russells from claiming insurance benefits for assets that they either denied owning or severely undervalued in their bankruptcy petitions."); *Bruegge v. Metro. Prop. & Cas. Ins. Co.*, No. 13-CV-1256-JPG-DGW, 2015 WL 738672, at *4 (S.D. Ill. Feb. 19, 2015) (applying judicial estoppel to party who claimed $950 worth of assets in bankruptcy and then $125,000 in an insurance claim).  Thus, the court rejects Naxos's efforts to hand-waive any discrepancy away by arguing that bankruptcy schedules are entitled to "little weight."  (*See* Resp. at 5-9.)

Ultimately, however, this is AFI's motion, and AFI failed to submit evidence establishing that Naxos's position in the bankruptcy proceeding was "clearly inconsistent" with its position in this case.  Thus, the court finds that AFI has failed to carry its burden to establish that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law.  Although AFI's failure to establish that Naxos's positions are clearly inconsistent is sufficient to deny AFI's motion, *see, e.g.*, *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, No. C15-1739JLR, 2017 WL 2774070, at *10 n. 17 (W.D. Wash. June 27, 2017), the court will also address the second and third *New Hampshire* factors.

//

### 2. Judicial Acceptance

The second factor courts consider in determining whether judicial estoppel is appropriate asks whether the first court adopted the party's allegedly inconsistent position and, as such, was misled. *See New Hampshire*, 532 U.S. at 750. In the bankruptcy context, the Ninth Circuit has noted that "[a] bankruptcy court may 'accept' the debtor's assertions" in a number of ways, including confirming the plan of reorganization. *See Hamilton*, 270 F.3d at 784 (collecting cases). But the *Hamilton* court also noted that the key for judicial acceptance is whether the bankruptcy court "rel[ied] on the debtor's nondisclosure." *See id.*; *see also Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998), *as amended* (May 13, 1998) ("A majority of courts apply judicial estoppel only if the court has relied on the party's previously inconsistent statement, and we have recently adopted that rule.").

On this factor, AFI argues that the bankruptcy court was misled because the value Naxos ascribed to its Business Personal Property in the Personal Property Schedule is "significantly different" from the value it ascribes to that property in this case. (*See* MSJ at 12.) In other words, AFI argues that the bankruptcy court must have been misled because Naxos made misleading statements. (*See id.*) This circular argument misses the point. Even if the court assumes that Naxos made misleading statements, that is not sufficient to establish that the bankruptcy court was misled. Instead, a party must show that the prior court adopted the prior inconsistent statement before judicial estoppel will apply because, "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus no threat to

judicial integrity." *See New Hampshire*, 532 U.S. at 750-51 (citations omitted). The Ninth Circuit has held that confirming a plan of reorganization—as the bankruptcy court did—can be sufficient "acceptance" of a debtor's bankruptcy representations for purposes of judicial estoppel. *See Hamilton*, 270 F.3d at 784 (collecting cases). But, in this case, AFI has not presented any evidence or argument suggesting that the bankruptcy court relied on or even considered Naxos's Personal Property Schedule in confirming Naxos's plan and entering a final decree in Naxos's bankruptcy case. (*See generally* MSJ.) Accordingly, the court finds that AFI has also failed to carry its burden on this factor.

### 3. Unfair Advantage or Unfair Detriment

The third judicial estoppel factor asks whether the party asserting an inconsistent position would receive an "unfair advantage or impose an unfair detriment on the opposing party if not estopped." *See New Hampshire*, 532 U.S. at 751 (citations omitted). AFI makes no attempt to argue that it will suffer an unfair detriment if the court does not estop Naxos.[10] (*See* MSJ at 13.) Rather, AFI argues that Naxos obtained an unfair advantage because it was in Naxos's interest to "minimize [its] assets in order to avoid forfeiting more money in the restructuring" in the bankruptcy proceeding, but its interest in this case is to maximize its claims to obtain more insurance coverage. (*See id.*) Although Naxos states throughout its brief that the neutral appraisal

---

[10] AFI was not a creditor in the bankruptcy proceedings. (*See* Muth Decl. ¶ 4, Ex. C at 39-40.) Moreover, Naxos's bankruptcy schedules had no impact on AFI's ability to independently assess Naxos's insurance claim or participate in the appraisal process. In fact, AFI participated in that process and even argued that the appraisal panel should find that the ACV of Naxos's loss to its Business Personal Property was $63,617.38 and the RCV of that loss was $93,405.43. (*See* Neal Decl. ¶ 3, Ex. 2 at 12; *see also id.* ¶ 4, Ex. 3 at 7.)

award cuts off any prejudice to AFI, Naxos fails to directly respond to AFI's argument that Naxos obtained an unfair advantage in the bankruptcy court. (*See generally* Resp.)

AFI's argument fails because it has not presented evidence that Naxos squirreled money away from its creditors. AFI did not explain how Naxos would have been forced to "forfeit more money in the restructuring" had it disclosed that its kitchen equipment and inventory was worth more money. (*See* MSJ at 13.) Naxos's disclosure statement estimated that its plan of reorganization would result in full repayment to its creditors, s*ee In Re: Naxos, LLC*, Dkt. ## 53 at 24, 53-4, 53-5, and AFI did not submit any evidence suggesting that Naxos failed to follow through on that promise, (*see generally* MSJ). Moreover, Naxos's plan of reorganization was to operate Spiro's more efficiently and repay Naxos's creditors with the proceeds from Spiro's. *See In Re: Naxos, LLC*, Dkt. # 52 at 1, 6. Given that Naxos's plan was to repay creditors by operating the business, it makes no difference whether the cooks at Spiro's were using a $100 grill or a $10,000 grill. In either scenario, Naxos would be free to propose repaying creditors using the proceeds from Spiro's.

Had Naxos proposed Chapter 7 liquidation and hidden assets from the bankruptcy court or failed to list claims in its bankruptcy schedules that could help repay creditors, this factor might weigh in AFI's favor. *See, e.g.*, *Hamilton*, 270 F.3d at 784 (holding that debtor in Chapter 7 bankruptcy proceeding was "precluded from pursuing claims about which he had knowledge, but did not disclose, during his bankruptcy proceedings"); *Bruegge*, 2015 WL 738672, at *4 (noting that allowing Chapter 7 debtor who failed to accurately value his assets in bankruptcy proceedings to recover for those assets in an

insurance claim "would unfairly allow [the insured] a windfall after he deprived his creditors of sums they would have been due in the bankruptcy proceedings"). Alternatively, if AFI showed that Naxos's plan would not have been confirmed or would have been treated differently had Naxos disclosed higher values on the Personal Property Schedule, this factor might weigh in AFI's favor. As it stands on this record, however, the court rejects AFI's conclusory argument that Naxos avoided forfeiting additional money in the bankruptcy proceeding by allegedly undervaluing the assets listed on the Personal Property Schedule. (*See* MSJ at 13.) Thus, AFI failed to carry its burden on this factor because it failed to marshal evidence or string together a cogent theory showing that Naxos obtained an unfair advantage from the allegedly undervalued Personal Property Schedule.

Ultimately, although the court readily agrees with the well-established maxim that parties should strive for full and frank disclosure in their bankruptcy filings, *see, e.g.*, *Ah Quin*, 733 F.3d at 272-73; *In re An-Tze Cheng*, 308 B.R. at 458, AFI brought this motion and bears the burden to establish that there are no material disputes of fact and that it is

//
//
//
//
//
//
//

entitled to summary judgment as a matter of law. AFI has not carried that burden. Thus, AFI's motion for partial summary judgment is DENIED.

## IV. CONCLUSION

For the reasons set forth above, the court DENIES AFI's motion for partial summary judgment (Dkt. # 31).

Dated this 20th day of November, 2019.

JAMES L. ROBART
United States District Judge